## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALECTO HEALTHCARE SERVICES MARTIN'S FERRY LLC<br>90 North Fourth Street<br>Martins Ferry, OH 43935 | ) ) ) ) ) |
| AKRON GENERAL MEDICAL CENTER<br>1 Akron General Way<br>Akron, OH 44307 | ) ) ) ) |
| ALVARADO HOSPITAL LLC<br>d/b/a ALVARADO HOSPITAL MEDICAL CENTER<br>6655 Alvarado Road<br>San Diego, CA 92120 | ) ) ) ) ) |
| AMERICAN LEGION HOSPITAL<br>703 East 8th Street<br>Crowley, LA 70526 | ) ) ) ) |
| BATON ROUGE GENERAL MEDICAL CENTER<br>3600 Florida Street<br>Baton Rouge, LA 70806 | ) ) ) ) |
| BAY PARK COMMUNITY HOSPITAL<br>2801 Bay Park Drive<br>Oregon, OH 43616 | ) ) ) ) |
| BELLEVUE HOSPITAL<br>1400 West Main Street<br>Bellevue, OH 44811 | ) ) ) ) |
| BETH ISRAEL MEDICAL CENTER<br>First Avenue at 16th street<br>New York, NY 10003 | ) ) ) ) |
| CENTRAL MAINE MEDICAL CENTER<br>300 Main Street<br>Lewiston, ME 04240 | ) ) ) ) |
| CLEVELAND CLINIC AVON HOSPITAL<br>33300 Cleveland Clinic Blvd<br>Avon, OH  44011 | ) ) ) ) ) |

Case No. 1:19-cv-3808

CLEVELAND CLINIC HEALTH SYSTEM – EAST          )
REGION                                          )
d/b/a EUCLID HOSPITAL                           )
18901 Lakeshore Blvd.                           )
Euclid, OH 44119                                )
                                                )
CLEVELAND CLINIC HEALTH SYSTEM – EAST          )
REGION                                          )
d/b/a HILLCREST HOSPITAL                         )
6780 Mayfield Road                              )
Mayfield Heights, OH 44124                       )
                                                )
CLEVELAND CLINIC HEALTH SYSTEM – EAST          )
REGION                                          )
d/b/a SOUTH POINTE HOSPITAL                      )
20000 Harvard Road                              )
Warrensville Heights, OH 44122                   )
                                                )
COMMUNITY HEALTH CENTER OF BRANCH              )
COUNTY                                          )
274 East Chicago Street                          )
Coldwater, MI 49036                             )
                                                )
CLEVELAND CLINIC MARTIN MEDICAL CENTER        )
200 Southeast Hospital Avenue                    )
Stuart, FL  34994                               )
                                                )
CRYSTAL CLINIC ORTHOPAEDIC CENTER, LLC         )
444 North Main Street                           )
Akron OH 44310                                  )
                                                )
DALLAS MEDICAL CENTER, LLC                      )
d/b/a DALLAS MEDICAL CENTER                      )
7 Medical Parkway                               )
Dallas, TX 75234                                )
                                                )
DESERT VALLEY HOSPITAL, INC.                     )
d/b/a DESERT VALLEY HOSPITAL                      )
16850 Bear Valley Road                          )
Victorville, CA 92395                            )
                                                )

EAST VALLEY GLENDORA HOSPITAL, LP          )
d/b/a GLENDORA COMMUNITY HOSPITAL          )
150 West Route 66                          )
Glendora, CA 91740                         )
                                           )
EMH REGIONAL MEDICAL CENTER d/b/a          )
UNIVERSITY HOSPITALS ELYRIA MEDICAL        )
CENTER                                     )
630 East River Street                      )
Elyria, OH 44035                           )
                                           )
EMMA L. BIXBY MEDICAL CENTER               )
818 Riverside Avenue                       )
Adrian, MI 49221                           )
                                           )
FAIRMONT GENERAL HOSPITAL, INC.            )
1325 Locust Avenue                         )
Fairmont, WV 26554                         )
                                           )
FAIRVIEW HOSPITAL                          )
18101 Lorain Avenue                        )
Cleveland, OH 44111                        )
                                           )
FLOWER HOSPITAL                            )
5200 Harroun Road                          )
Sylvania, ON 43560                         )
                                           )
FRANCISCAN MISSIONARIES OF OUR LADY        )
HEALTH SYSTEM                              )
4801 Ambassador Caffery Parkway            )
Lafayette, LA  70508                       )
                                           )
FRANCISCAN MISSIONARIES OF OUR LADY        )
HEALTH SYSTEM d/b/a ST. ELIZABETH HOSPITAL )
1125 West Highway 30                       )
Gonzales, LA  70737                        )
                                           )
FRANCISCAN MISSIONARIES OF OUR LADY        )
HEALTH SYSTEM                              )
5000 Hennessy Boulevard                    )
Baton Rouge, LA  70808                     )
                                           )

FRANCISCAN MISSIONARIES OF OUR LADY      )
HEALTH SYSTEM                            )
309 Jackson Street                       )
Monroe, LA  71201                        )
                                         )
GOLETA VALLEY COTTAGE HOSPITAL           )
351 South Patterson Avenue               )
Santa Barbara, CA 93111                  )
                                         )
HARLINGEN MEDICAL CENTER, LIMITED        )
PARTNERSHIP                              )
d/b/a HARLINGEN MEDICAL CENTER           )
5501 South Expressway 77                 )
Harlingen, TX 78550                      )
                                         )
HAYWARD SISTERS HOSPITAL                 )
d/b/a ST. ROSE HOSPITAL                  )
27200 Calaroga Avenue                    )
Hayward, CA 94545                        )
                                         )
HEART HOSPITAL OF LAFAYETTE              )
1105 Kaliste Saloom Road                 )
Lafayette, LA  70508                     )
                                         )
IBERIA MEDICAL CENTER                    )
2315 East Main Street                    )
New Iberia, LA  70560                    )
                                         )
KNAPP MEDICAL CENTER, A NON-PROFIT TEXAS )
CORPORATION                              )
d/b/a KNAPP MEDICAL CENTER               )
1401 East Eight Street                   )
Weslaco, TX 78596                        )
                                         )
LAFAYETTE GENERAL MEDICAL CENTER, INC.   )
1214 Coolidge Avenue                     )
Lafayette, LA 70503                      )
                                         )
LAFAYETTE GENERAL SURGICAL HOSPITAL, LLC )
1000 West Pinhook Road, Suite 100        )
Lafayette, LA 70503                      )
                                         )

LAKE HOSPITAL SYSTEM INC.                           )
d/b/a TRIPOINT MEDICAL CENTER                       )
7590 Auburn Road                                    )
Concord, OH 44077                                   )
                                                    )
LIMA MEMORIAL HEALTH SYSTEM                         )
1001 Bellefontaine Avenue                           )
Lima, OH 45804                                      )
                                                    )
LOMA LINDA UNIVERSITY CHILDREN'S HOSPITAL)
11234 Anderson Street                               )
Loma Linda, CA 92354                                )
                                                    )
LOMA LINDA UNIVERSITY MEDICAL CENTER                )
11234 Anderson Street                               )
Loma Linda, CA 92354                                )
                                                    )
LOMA LINDA UNIVERSITY MEDICAL CENTER-               )
MURRIETA                                            )
28062 Baxter Road                                   )
Murrieta, CA 92563                                  )
                                                    )
LUTHERAN HOSPITAL                                   )
1730 West 25 Street                                 )
Cleveland, OH 44113                                 )
                                                    )
MARIN GENERAL HOSPITAL                              )
250 Bon Air Road                                    )
Greenbrae, CA 94904                                 )
                                                    )
MARYMOUNT HOSPITAL                                  )
12300 McCracken Road                                )
Garfield Heights, OH 44125                          )
                                                    )
MEDINA HOSPITAL                                     )
1000 East Washington Street                         )
Medina, OH 44256                                    )
                                                    )
MEMORIAL HOSPITAL                                   )
715 South Taft Avenue                               )
Fremont, OH 43420                                   )
                                                    )

MERCY MEDICAL CENTER, INC.          )
1320 Mercy Drive NW                 )
Canton, OH 44708                    )
                                    )
MONROE HOSPITAL                     )
4011 S Monroe Medical Park Boulevard )
Bloomington, IN 47403               )
                                    )
MONROE REGIONAL HOSPITAL            )
718 North Macomb Street             )
Monroe, MI 48162                    )
                                    )
MOUNT SINAI HOSPITAL                )
One Gustave L. Levy Place           )
New York, NY 10029                  )
                                    )
NORTHERN DUTCHESS HOSPITAL          )
6511 Springbrook Avenue             )
Rhinebeck, NY 12572                 )
                                    )
NORTH OAKS MEDICAL CENTER, LLC      )
15790 Paul Vega MD Drive            )
HAMMOND, LA 70403                   )
                                    )
OHIO VALLEY MEDICAL CENTER, INC.    )
2000 Eoff Street                    )
Wheeling, WV 26003                  )
                                    )
OLYMPIA HEALTH CARE, LLC            )
5900 West Olympic Boulevard         )
Los Angeles, CA 90036               )
                                    )
OUR LADY OF THE ANGELS HOSPITAL     )
433 Plaza Street                    )
Bogalusa, LA  70427                 )
                                    )
PACIFICA OF THE VALLEY CORPORATION  )
9449 San Fernando Road              )
Sun Valley, CA 91352                )
                                    )

PRIME HEALTHCARE BLUE SPRINGS, LLC          )
d/b/a ST MARY'S MEDICAL CENTER              )
201 Northwest R.D. Mize Road                )
Blue Springs, MO 64014                      )
                                            )
PRIME HEALTHCARE CENTINELA, LLC             )
d/b/a CENTINELA HOSPITAL MEDICAL CENTER     )
555 East Hardy Street                       )
Inglewood, CA 90301                         )
                                            )
PRIME HEALTHCARE FOUNDATION –               )
COSHOCTON, LLC                              )
d/b/a COSHOCTON REGIONAL MEDICAL CENTER     )
1460 Orange Street                          )
Coshocton, OH 43812                         )
                                            )
PRIME HEALTHCARE FOUNDATION – EAST          )
LIVERPOOL, LLC d/b/a/ EAST LIVERPOOL CITY   )
HOSPITAL                                    )
425 West 5th Street                         )
East Liverpool, OH 43920                    )
                                            )
PRIME HEALTHCARE FOUNDATION – MISSION,      )
LLC                                         )
d/b/a MISSION REGIONAL MEDICAL CENTER       )
900 South Bryan Road                        )
Mission, TX 78572                           )
                                            )
PRIME HEALTHCARE FOUNDATION – SOUTHERN      )
REGIONAL, LLC                               )
d/b/a SOUTHERN REGIONAL MEDICAL CENTER      )
11 Upper Riverdale Road                     )
Riverdale, GA 30274                         )
                                            )
PRIME HEALTHCARE HUNTINGTON BEACH, LLC      )
d/b/a HUNTINGTON BEACH HOSPITAL             )
17772 Beach Boulevard                       )
Huntington Beach, CA 92647                  )
                                            )
PRIME HEALTHCARE LA PALMA, LLC              )
d/b/a LA PALMA INTERCOMMUNITY HOSPITAL      )
7901 Walker Street                          )
La Palma, CA 90623                          )

PRIME HEALTHCARE PARADISE VALLEY, LLC )
d/b/a/ PARADISE VALLEY HOSPITAL )
2400 East 4th Street )
National City, CA 91950 )
)
PRIME HEALTHCARE SERVICES - ENCINO, LLC )
d/b/a ENCINO HOSPITAL MEDICAL CENTER )
16237 Ventura Boulevard )
Encino, CA 91436 )
)
PRIME HEALTHCARE SERVICES – GADSDEN, LLC )
d/b/a RIVERVIEW REGIONAL MEDICAL CENTER )
600 South Third Street )
Gadsden, AL 35901 )
)
PRIME HEALTHCARE SERVICES - GARDEN CITY, )
LLC )
d/b/a GARDEN CITY HOSPITAL )
6245 Inkster Road )
Garden City, MI 48135 )
)
PRIME HEALTHCARE SERVICES - GARDEN )
GROVE, LLC )
d/b/a GARDEN GROVE HOSPITAL & MEDICAL )
CENTER )
12601 Garden Grove Boulevard )
Garden Grove, CA 92843 )
)
PRIME HEALTHCARE SERVICES – KANSAS CITY, )
LLC )
d/b/a ST JOSEPH MEDICAL CENTER )
1000 Carondelet Drive )
Kansas City, MO 64114 )
)
PRIME HEALTHCARE SERVICES – LANDMARK, )
LLC )
d/b/a LANDMARK MEDICAL CENTER )
115 Cass Avenue )
Woonsocket, RI 02895 )
)

PRIME HEALTHCARE SERVICES – LEHIGH          )
ACRES, LLC                                 )
d/b/a LEHIGH REGIONAL MEDICAL CENTER       )
1500 Lee Boulevard                         )
Lehigh Acres, FL 33936                     )
                                           )
PRIME HEALTHCARE SERVICES – LOWER BUCKS,   )
LLC                                        )
d/b/a LOWER BUCKS HOSPITAL                 )
501 Bath Road                              )
Bristol, PA 19007                          )
                                           )
PRIME HEALTHCARE SERVICES - MESQUITE, LLC  )
d/b/a DALLAS REGIONAL MEDICAL CENTER       )
1011 North Galloway Avenue                 )
Mesquite, TX 75149                         )
                                           )
PRIME HEALTHCARE SERVICES – MONTCLAIR,     )
LLC                                        )
d/b/a MONTCLAIR HOSPITAL MEDICAL CENTER    )
5000 San Bernardino Street                 )
Montclair, CA 91763                        )
                                           )
PRIME HEALTHCARE SERVICES – NORTH VISTA,   )
LLC                                        )
d/b/a NORTH VISTA HOSPITAL                 )
1409 East Lake Mead Boulevard             )
North Las Vegas, NV 89030                  )
                                           )
PRIME HEALTHCARE SERVICES – PAMPA, LLC     )
d/b/a PAMPA REGIONAL MEDICAL CENTER        )
1 Medical Plaza                            )
Pampa, TX 79065                            )
                                           )
PRIME HEALTHCARE SERVICES – PORT HURON,    )
LLC                                        )
d/b/a LAKE HURON MEDICAL CENTER            )
2601 Electric Avenue                       )
Port Huron, MI 48060                       )
                                           )

PRIME HEALTHCARE SERVICES - PROVIDENCE,　)
LLC　)
d/b/a PROVIDENCE MEDICAL CENTER　)
8929 Parallel Parkway　)
Kansas City, KS 66112　)
　)
PRIME HEALTHCARE SERVICES – RENO, LLC　)
d/b/a SAINT MARY'S REGIONAL MEDICAL CENTER　)
235 West 6th St　)
Reno, NV 89503　)
　)
PRIME HEALTHCARE SERVICES – ROXBOROUGH,　)
LLC　)
d/b/a ROXBOROUGH MEMORIAL HOSPITAL　)
5800 Ridge Avenue　)
Philadelphia, PA 19128　)
　)
PRIME HEALTHCARE SERVICES – SAINT　)
CLARE'S, LLC　)
d/b/a SAINT CLARE'S HOSPITAL – DENVILLE　)
25 Pocono Road　)
Denville, NJ 07835　)
　)
PRIME HEALTHCARE SERVICES – SAINT JOHN　)
LEAVENWORTH, LLC　)
d/b/a SAINT JOHN HOSPITAL　)
3500 South Fourth Street　)
Leavenworth, KS 66048　)
　)
PRIME HEALTHCARE SERVICES – ST. MARY'S　)
PASSAIC, LLC　)
d/b/a ST. MARY'S GENERAL HOSPITAL　)
350 Boulevard　)
Passaic, NJ 07055　)
　)
PRIME HEALTHCARE SERVICES – ST. MICHAEL'S,　)
LLC　)
d/b/a SAINT MICHAEL'S MEDICAL CENTER　)
111 Central Avenue　)
Newark, NJ 07109　)
　)

PRIME HEALTHCARE SERVICES – SAN DIMAS, LLC )
d/b/a SAN DIMAS COMMUNITY HOSPITAL        )
1350 West Covina Boulevard                )
San Dimas, CA 91773                       )
                                          )
PRIME HEALTHCARE SERVICES – SHASTA, LLC   )
d/b/a SHASTA REGIONAL MEDICAL CENTER      )
1100 Butte Street                         )
Redding, CA 96001                         )
                                          )
PRIME HEALTHCARE SERVICES – SHERMAN       )
OAKS, LLC                                 )
d/b/a SHERMAN OAKS HOSPITAL               )
4929 Van Nuys Boulevard                   )
Sherman Oaks, CA 91403                    )
                                          )
PRIME HEALTHCARE SERVICES – SUBURBAN      )
HOSPITAL, LLC                             )
d/b/a SUBURBAN COMMUNITY HOSPITAL         )
2701 Dekalb Pike                          )
Norristown, PA 19401                      )
                                          )
PRIME HEALTHCARE ANAHEIM, LLC             )
d/b/a WEST ANAHEIM MEDICAL CENTER         )
3033 West Orange Avenue                   )
Anaheim, CA 92804                         )
                                          )
PUTNAM HOSPITAL CENTER                    )
670 Stoneleigh Avenue                     )
Carmel, NY 10512                          )
                                          )
ROBINSON HEALTH SYSTEM, INC.              )
d/b/a UNIVERSITY HOSPITALS PORTAGE MEDICAL )
CENTER                                    )
6847 North Chestnut Street                )
Ravenna, OH 44266                         )
                                          )
SAMARITAN REGIONAL HEALTH SYSTEM          )
d/b/a UNIVERSITY HOSPITALS SAMARITAN      )
MEDICAL CENTER                            )
1025 Center Street                        )
Ashland, OH 44805                         )
                                          )

SANTA BARBARA COTTAGE HOSPITAL          )
400 West Pueblo Street                  )
Santa Barbara, CA 93102                 )
                                        )
SHANNON MEDICAL CENTER                  )
120 East Harris Avenue                  )
San Angelo, TX 76903                    )
                                        )
HEALTHQUEST, INC.                       )
d/b/a SHARON HOSPITAL                   )
50 Hospital Hill Road                   )
Sharon, CT 06069                        )
                                        )
SONOMA VALLEY HOSPITAL                  )
347 Andrieux Street                     )
Sonoma, CA 95476                        )
                                        )
SPRINGHILL INTERNATIONAL MEDICAL        )
CORPORATION                             )
3719 Dauphin Street                     )
Mobile, AL 36608                        )
                                        )
ST LUKE'S ROOSEVELT HOSPITAL CENTER     )
1111 Amsterdam Avenue                   )
New York, NY 10025                      )
                                        )
ST. VINCENT CHARITY MEDICAL CENTER      )
2351 East 22nd Street                   )
Cleveland, OH 44115                     )
                                        )
THE CLEVELAND CLINIC FOUNDATION         )
9500 Euclid Avenue                      )
Cleveland, OH 44195                     )
                                        )
THE NEW YORK EYE AND EAR INFIRMARY      )
310 East 14th Street                    )
New York, NY 10003                      )
                                        )

THE PARMA COMMUNITY GENERAL HOSPITAL          )
ASSOCIATION                                   )
d/b/a UNIVERSITY HOSPITALS PARMA MEDICAL      )
CENTER                                        )
7007 Powers Boulevard                         )
Parma, OH 44129                               )
                                              )
THE TOLEDO HOSPITAL                           )
2142 North Cove Boulevard                     )
Toledo, OH 43606                              )
                                              )
UH REGIONAL HOSPITALS                         )
d/b/a UNIVERSITY HOSPITALS REGIONAL           )
HOSPITALS                                     )
27100 Chardon Road                            )
Richmond Heights, OH 44143                    )
                                              )
UNION HOSPITAL                                )
659 Boulevard                                 )
Dover, OH  44622                              )
                                              )
UNIVERSITY HOSPITALS AHUJA MEDICAL            )
CENTER, INC.                                  )
d/b/a UNIVERSITY HOSPITALS AHUJA MEDICAL      )
CENTER                                        )
3999 Richmond Road                            )
Beachwood, OH 44122                           )
                                              )
UNIVERSITY HOSPITAL & CLINICS, INC.           )
2390 West Congress                            )
Lafayette, LA 70506                           )
                                              )
UNIVERSITY HOSPITALS CLEVELAND MEDICAL        )
CENTER                                        )
d/b/a UNIVERSITY HOSPITALS CLEVELAND          )
MEDICAL CENTER, UNIVERSITY HOSPITALS          )
SEIDMAN CANCER CENTER, UNIVERSITY             )
HOSPITALS MACDONALD WOMEN'S HOSPITAL          )
11100 Euclid Avenue                           )
Cleveland, OH 44106                           )
                                              )

UNIVERSITY HOSPITALS GEAUGA MEDICAL   )
CENTER                                )
d/b/a UNIVERSITY HOSPITALS GEAUGA     )
MEDICAL CENTER                        )
13207 Ravenna Road                    )
Chardon, OH 44024                     )
                                      )
UNIVERSITY HOSPITALS ST. JOHN MEDICAL )
CENTER                                )
d/b/a UNIVERSITY HOSPITALS ST. JOHN   )
MEDICAL CENTER                        )
29000 Center Ridge Road               )
Westlake, OH 44145                    )
                                      )
VASSAR BROTHERS MEDICAL CENTER        )
45 Reade Place                        )
Poughkeepsie, NY 12601                )
                                      )
VERITAS HEALTH SERVICES, INC.         )
d/b/a CHINO VALLEY MEDICAL CENTER     )
5451 Walnut Avenue                    )
Chino, CA 91710                       )
                                      )
WILSON N. JONES REGIONAL MEDICAL CENTER )
500 North Highland Avenue             )
Sherman, TX 75091                     )
                                      )
WESTON CLEVELAND CLINIC FLORIDA       )
2959 Cleveland Clinic Boulevard       )
Weston, FL 33331                      )
                                      )
WILLIS-KNIGHTON MEDICAL CENTER        )
2600 Greenwood Road.                  )
Shreveport, LA 71130                  )
                                      )
WOOSTER COMMUNITY HOSPITAL            )
1761 Beall Avenue                     )
Wooster, OH 44691                     )
                                      )
                                      )
            Plaintiffs,               )
                                      )
        v.                            )

ALEX M. AZAR II, Secretary              )
United States Department of Health and Human Services, )
200 Independence Avenue, S.W.          )
Washington, DC  20201,             )
                        )
              Defendant.      )

—————————————————————)

## COMPLAINT

## I.    INTRODUCTION AND NATURE OF SUIT

1.    Plaintiffs challenge the refusal of the Secretary of the Department of Health and Human Services (the "Secretary") in the Inpatient Prospective Payment System ("IPPS") rulemaking for Federal fiscal year ("FFY") 2019 to reverse the effects of a 0.7 percent payment cut that was implemented between FFYs 2014 and 2017.

2.    By continuing the 0.7 percent negative adjustment after FFY 2017, the Secretary has effectively extended an adjustment that Congress required be temporary, limited recoupments confined to statutorily specified FFYs.  These limited changes were meant to address an administrative coding change to the IPPS that began in FFY 2008 and, anticipating an increase in aggregate payments, Congress authorized the Secretary to recoup the resulting overpayments.  The first recoupment was to occur in FFYs 2010, 2011 and 2012, authorized under the TMA [Transitional Medical Assistance], Abstinence Education and QI [Qualifying Individuals] Programs Extension Act of 2007 ("TMA"), Pub. L. No. 110-90, § 7(b)(1)(B), 121 Stat. 984, 986-87 (2007).  Then, Congress authorized additional adjustments to recover approximately $11 billion in overpayments, limiting the recoupments to FFYs 2014 through

2017.  *Id.*, *as amended by* the American Taxpayer Relief Act of 2012 ("ATRA"), Pub. L. No. 112-240, § 631(b), 126 Stat. 2313 (2013).

3.      Importantly, Congress expressly barred the Secretary from continuing any recoupment beyond FFY 2017, stating that recoupment adjustments "shall not be included in the determination of standardized amounts for discharges occurring in a subsequent year."  *Id.* § 7(b)(2).  Despite several other amendments to the TMA over the subsequent years, that language remains.

4.      To offset the recoupment adjustments from prior years, the Secretary should have adopted an *increase* in IPPS payments starting in FFY 2018.  This did not fully occur, and the Secretary did not reverse 0.7 percent of the total reduction.  Because Congress did not authorize this permanent negative reduction to inpatient hospital payments, the Secretary's failure to reverse the 0.7 percent reduction in FFY 2018 (and onward) is in excess of the Secretary's statutory authority and otherwise not in accordance with law.

5.      This action has reduced Plaintiffs Medicare reimbursement for inpatient services in FFY 2019 (the year at issue in this case) and will continue to do so in perpetuity.

6.      Accordingly, the Plaintiffs seek an order requiring the Secretary to recalculate FFY 2019 inpatient payment rates to apply an additional 0.7 percent positive adjustment and pay the Plaintiffs accordingly.

## II.      PARTIES

7.      The Plaintiffs in this action consist of one-hundred and seventeen (117) hospitals that participate in the Medicare program.  The Plaintiffs in this action are listed below with their Medicare provider numbers, as set forth in their administrative appeals:

- Akron General Medical Center, Medicare Provider No. 36-0027;

- Alvarado Hospital Medical Center, Medicare Provider No. 05-0757;

- American Legion Hospital, Medicare Provider No. 19-0044;

- Baton Rouge General Medical Center, Medicare Provider No. 19-0065;

- Bay Park Community Hospital, Medicare Provider No. 36-0259;

- Bellevue Hospital, Medicare Provider No. 36-0107;

- Centinela Hospital Medical Center, Medicare Provider No. 05-0739;

- Central Maine Medical Center, Medicare Provider No. 20-0024;

- Chino Valley Medical Center, Medicare Provider No. 05-0586;

- Cleveland Clinic Avon Hospital, Medicare Provider No. 36-0364;

- Cleveland Clinic Foundation, Medicare Provider No. 36-0180;

- Cleveland Clinic Health System – East Region, d/b/a Euclid Hospital, Medicare Provider No. 36-0082;

- Cleveland Clinic Health System – East Region, d/b/a Hillcrest Hospital, Medicare Provider No. 36-0230;

- Cleveland Clinic Health System – East Region, d/b/a South Pointe Hospital, Medicare Provider No. 36-0144;

- Community Health Center of Branch County, Medicare Provider No. 23-0022;

- Coshocton County Memorial Hospital, Medicare Provider No. 36-0109;

- Crystal Clinic Orthopaedic Center, LLC, Medicare Provider No. 36-0351;

- Dallas Medical Center, Medicare Provider No. 45-0379;

- Dallas Regional Medical Center, Medicare Provider No. 45-0688;

- Desert Valley Hospital, Medicare Provider No. 05-0709;

- East Liverpool City Hospital, Medicare Provider No. 36-0096;

- East Ohio Regional Hospital, Medicare Provider No. 36-0080;

- Emma L. Bixby Medical Center, Medicare Provider No. 23-0005;

- Encino Hospital Medical Center, Medicare Provider No. 05-0158;

- Fairmont Regional Medical Center, Medicare Provider No. 51-0047;

- Fairview Hospital, Medicare Provider No. 36-0077;

- Flower Hospital, Medicare Provider No. 36-0074;

- Garden City Hospital, Medicare Provider No. 23-0244;

- Garden Grove Hospital & Medical Center, Medicare Provider No. 05-0230;

- Glendora Community Hospital, Medicare Provider No. 05-0205;

- Goleta Valley Cottage Hospital, Medicare Provider No. 05-0357;

- Harlingen Medical Center, Medicare Provider No. 45-0855;

- Hayward Sisters Hospital, d/b/a St. Rose Hospital, Medicare Provider No. 05-0002;

- Heart Hospital of Acadiana, Medicare Provider No. 19-0263;

- Huntington Beach Hospital, Medicare Provider No. 05-0526;

- Iberia General Hospital and Medical Center, Medicare Provider No. 19-0054;

- Knapp Medical Center, Medicare Provider No. 45-0128;

- Lafayette General Medical Center, Medicare Provider No. 19-0002;

- Lafayette General Surgical Hospital, Medicare Provider No. 19-0268;

- Lake Health System – Tripoint Medical Center, Medicare Provider No. 36-0098;

- Lake Huron Medical Center, Medicare Provider No. 23-0031;

- Landmark Medical Center, Medicare Provider No. 41-0011;

- La Palma Intercommunity Hospital, Medicare Provider No. 05-0580;

- Lehigh Regional Medical Center, Medicare Provider No. 10-0107;

- Lima Memorial Hospital, Medicare Provider No. 36-0009;

- Loma Linda University Children's Hospital, Medicare Provider No. 05-0778;

- Loma Linda University Medical Center, Medicare Provider No. 05-0327;

- Loma Linda University Medical Center – Murrieta, Medicare Provider No. 05-0770;

- Lower Bucks Hospital, Medicare Provider No. 39-0070;

- Lutheran Hospital, Medicare Provider No. 36-0087;

- Marin General Hospital, Medicare Provider No. 05-0360;

- Martin Medical Center, Medicare Provider No. 10-0044;

- Marymount Hospital, Medicare Provider No. 36-0143;

- Medina Hospital, Medicare Provider No. 36-0091;

- Memorial Hospital, Medicare Provider No. 36-0156;

- Mercy Medical Center, Medicare Provider No. 36-0070;

- Mission Regional Medical Center, Medicare Provider No. 45-0176;

- Monroe Hospital, Medicare Provider No. 15-0183;

- Monroe Regional Hospital, Medicare Provider No. 23-0099;

- Montclair Hospital Medical Center, Medicare Provider No. 05-0758;

- Mount Sinai Beth Israel Medical Center, Medicare Provider No. 33-0169;

- Mount Sinai Hospital, Medicare Provider No. 33-0024;

- Mount Sinai St. Luke's, Provider No. 33-0046;

- Northern Dutchess Hospital, Medicare Provider No. 33-0049;

- North Oaks Medical Center, LLC, Medicare Provider No. 19-0015;

- North Vista Hospital, Medicare Provider No. 29-0005;

- NY Eye and Ear Infirmary, Medicare Provider No. 33-0100;

- Ohio Valley Medical Center, Medicare Provider No. 51-0039;

- Olympia Medical Center, Medicare Provider No. 05-0742;

- Our Lady of the Angels Hospital, Medicare Provider No. 19-0312;

- Our Lady of the Lake Ascension Community Hospital, Medicare Provider No. 19-0242;

- Our Lady of the Lake Regional Medical Center, Medicare Provider No. 19-0064;

- Our Lady of the Lourdes Regional Medical Center, Medicare Provider No. 19-0102;

- Pacifica Hospital of the Valley, Medicare Provider No. 05-0378;

- Pampa Regional Medical Center, Medicare Provider No. 45-0099;

- Paradise Valley Hospital, Medicare Provider No. 05-0024;

- Providence Medical Center, Medicare Provider No. 17-0146;

- Putnam Hospital Center, Medicare Provider No. 33-0273;

- Riverview Regional Medical Center, Medicare Provider No. 01-0046;

- Roxborough Memorial Hospital, Medicare Provider No. 39-0304;

- Saint Clare's Hospital, Medicare Provider No. 31-0050;

- Saint John Hospital, Medicare Provider No. 17-0009;

- Saint Mary's Regional Medical Center, Medicare Provider No. 29-0009;

- Saint Michael's Medical Center, Medicare Provider No. 31-0096;

- San Dimas Community Hospital, Medicare Provider No. 05-0588;

- Santa Barbara Cottage Hospital, Medicare Provider No. 05-0396;

- Shannon Medical Center, Medicare Provider No. 45-0571;

- Sharon Hospital, Medicare Provider No. 07-0004;

- Shasta Regional Medical Center, Medicare Provider No. 05-0764;

- Sherman Oaks Hospital, Medicare Provider No. 05-0755;

- Sonoma Valley Hospital, Medicare Provider No. 05-0090;

- Southern Regional Medical Center, Medicare Provider No. 11-0165;

- Springhill Memorial Hospital, Medicare Provider No. 01-0144;

- St. Francis Medical Center, Medicare Provider No. 19-0125;

- St. Joseph Medical Center, Medicare Provider No. 26-0085;

- St. Mary's Hospital, Passaic, Medicare Provider No. 31-0006;

- St. Mary's Medical Center, Medicare Provider No. 26-0193;

- St. Vincent Charity Medical Center, Medicare Provider No. 36-0037;

- Suburban Community Hospital, Medicare Provider No. 39-0116;

- The Toledo Hospital, Medicare Provider No. 36-0068;

- Union Hospital, Medicare Provider No. 36-0010;

- University Hospitals Richmond Medical Center, Medicare Provider No. 36-0075;

- University Hospitals Ahuja Medical Center, Medicare Provider No. 36-0359;

- University Hospitals and Clinics, Medicare Provider No. 19-0006;

- University Hospitals Cleveland Medical Center, Medicare Provider No. 36-0137;

- University Hospitals Elyria Medical Center, Medicare Provider No. 36-0145;

- University Hospitals Geauga Medical Center, Medicare Provider No. 36-0192;

- University Hospitals Parma Medical Center, Medicare Provider No. 36-0041;

- University Hospitals Portage Medical Center, Medicare Provider No. 36-0078;

- University Hospitals Samaritan Medical Center, Medicare Provider No. 36-0002;

- University Hospitals St. John Medical Center, Medicare Provider No. 36-0123;

- Vassar Brothers Medical Center, Medicare Provider No. 33-0023;

- Wilson N. Jones Regional Medical Center, Medicare Provider No. 45-0469;

- West Anaheim Regional Medical Center, Medicare Provider No. 05-0426;

- Weston Cleveland Clinic Florida, Medicare Provider No. 10-0289;

- Willis-Knighton Medical Center, Medicare Provider No. 19-0111; and

- Wooster Community Hospital, Medicare Provider No. 36-0036.

8.      Defendant Alex M. Azar II is the Secretary of the United States Department of Health and Human Services ("HHS"), and is sued in his official capacity.  HHS is the Federal agency that administers CMS.  CMS is the Federal agency to which the Secretary has delegated administrative authority over the Medicare program, which is established under title XVIII of the Social Security Act.  *See* 42 U.S.C. § 301 *et seq.*  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

### III.      JURISDICTION AND VENUE

9.      This action arises under the Medicare statute, title XVIII of the Social Security Act, 42 U.S.C § 1395, the APA, 5 U.S.C. § 551, and 28 U.S.C. § 1361 (mandamus).

10.      Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(ii) and 1395oo(f)(1).

11.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

### IV.      BACKGROUND

#### A.      MEDICARE PAYMENT FOR INPATIENT HOSPITAL SERVICES

12.      The Medicare program provides federally funded health insurance for certain elderly and disabled persons under title XVIII of the Social Security Act.  42 U.S.C. § 1395. Part A of the Medicare program covers inpatient hospital services.  42 U.S.C. § 1395d(a)(1).

13.     Medicare Part A pays hospitals for inpatient hospital services on a per discharge basis under the IPPS.  42 U.S.C. § 1395ww(d); 42 C.F.R. § 412.2(a).  Hospitals receive payment under the IPPS for operating costs associated with covered inpatient discharges.   42 U.S.C. § 1395ww(d)(3); 42 C.F.R. § 412.2(c).

14.     The amount paid for a covered discharge is the product of a base rate per discharge—the standardized amount as updated annually by the Secretary for inflation, 42 U.S.C. § 1395ww(d)(2)(C); 42 C.F.R. §412.64(c)—and the weighted rate for the patient's condition at the time of the admission—the diagnosis-related groups, 42 U.S.C. § 1395ww(d)(4); 42 C.F.R. § 412.60—relative to the average cost for treating Medicare beneficiaries in the same DRG.

15.     The Secretary can make several types of adjustments to inpatient payment rates. The Secretary is required to adjust the weighted rates for each condition at least annually to account for changes in resource consumption, 42 U.S.C. § 1395ww(d)(4)(C)(i), made to reflect changes in treatment patterns, technology, and any other facts that may change the relative use of hospital resources.  The Secretary may prospectively adjust the standardized amount when he determines that a change to the DRG classification and weighting factors are likely to result in a change in aggregate IPPS payments due to changes in coding and classification instead of changes in the mix of patients served.  42 U.S.C. § 1395ww(d)(3)(A)(vi).  Lastly, the Secretary may also adjust the standardized amount by "provid[ing] by regulation for such other exceptions and adjustments to such payment amounts under [section 1395ww(d)] as the Secretary deems appropriate."  42 U.S.C. §1395ww(d)(5)(I).

## B.     HISTORY OF THE ATRA ADJUSTMENT

### 1.    *Initial Documentation and Coding Adjustments*

16.    In the FFY 2008 IPPS Final Rule, the Secretary implemented the Medicare severity diagnosis-related groups ("MS-DRG") classification system "to better recognize increased resource use due to severity of illness." 72 Fed. Reg. 47130, 47155 (Aug. 22, 2007). This change increased the number of payment groups from 538 to 745. *Id.* at 47170. Each MS-DRG is assigned a relative weight to reflect the average relative resources required to treat cases in the MS-DRG, and that amount is multiplied by the standardized amount to calculate IPPS payment. During the FFY 2008 rulemaking, the Secretary predicted that the MS-DRG rollout would incentivize providers to more accurately document and code their inpatient encounters, which was expected to result in an artificial increase in program payments "not respresent[ing] real increases in underlying resource demands." *Id.* at 47175.

17.    The Secretary therefore estimated that a permanent documentation and coding adjustment of 4.8 percent to the standardized amount was necessary to maintain budget neutrality and eliminate the aggregate increase in payments that might flow from the more accurate coding of patient diagnoses. *Id.* at 47186. Purportedly acting on his authority under 42 U.S.C. § 1395ww(d)(3)(A)(vi), the Secretary reduced the standardized amount by 1.2 percent in FFY 2008, and proposed two sequential reductions in FFYs 2009 and 2010 in the amount of 1.8 percent. *Id.*

### 2.    *TMA and Prospective Adjustments and Limited Recoupment Through FFY 2012*

18.    Shortly after the publication of the FFY 2008 IPPS Final Rule, Congress passed TMA. Section 7(a) of the TMA required the Secretary to reduce the negative 1.2 percent adjustment adopted for FFY 2008 to a negative 0.6 percent adjustment, and reduce the negative

1.8 percent adjustment proposed for FFY 2009 to negative 0.9 percent.  TMA, § 7(a).  Section

7(b)(1)(A) also required the Secretary to make further prospective and permanent adjustments as

needed to budget-neutralize the MS-DRG rollout under 42 U.S.C. § 1395ww(d)(3)(A)(vi), but

only after performing a retrospective evaluation of the discharge data for FFYs 2008 and 2009.

*Id.* § 7(b)(1)(A).  These latter adjustments would eliminate the effect of the coding and

classification changes that do not reflect actual case mix changes in subsequent years, not recoup

or repay overpayments or underpayments.  TMA § 7(b)(1)(A); 42 U.S.C. §1395ww(d)(3)(A)(vi)

(permitting the Secretary to "adjust the average standardized amounts . . . for subsequent fiscal

years so as to eliminate the effect of such coding or classification changes").

19.     Congress *also* directed the Secretary to determine whether additional adjustments

were necessary to recoup or repay any change (positive or negative) in aggregate FFY 2008 and

2009 payments and to implement an appropriate adjustment for discharges in FFYs 2010 through

2012.  TMA §7(b)(1)(B).  However, Congress expressly prohibited the Secretary from making

these adjustments permanent, stating that such adjustment "shall not be included in the

determination of standardized amounts for discharges occurring in a subsequent year."  TMA

§ 7(b)(2).

### 3.     *ATRA and Additional Recoupment Through FFY 2016*

20.     The Secretary did not fully phase in the prospective adjustments under section

7(b)(1)(A) until FFY 2013, and therefore alleged that payments in FFY 2010 through 2012 were

overstated.  *See, e.g.*, 78 Fed. Reg. 27486, 27504 (May 10, 2013) ("delaying full implementation

of the prospective portion of the adjustment . . . until FY 2013 resulted in payments in FY 2010

through FY 2012 being overstated").  As then drafted, TMA did not allow for recovery of those

overpayments, as section 7(b)(1)(B) was limited to recoupments of overpayments from FFY 2008 and 2009 only.

21.     Section 361 of ATRA, which added section 7(b)(1)(B)(ii) to TMA, addressed this issue and directed the Secretary to adjust the standardized rates for FFYs 2014 through 2017 to recoup $11 billion, representing the estimate of overpayments hospitals received due to the delay in implementing the adjustments necessary to budget neutralize the MS-DRG rollout. Importantly, ATRA explicitly limited recoupment to discharges "occurring only during fiscal years 2014, 2015, 2016 and 2017 . . . ."  TMA § 7(b)(1)(B)(ii), *as amended by* ATRA § 631(b). This recoupment adjustment also remained subject to TMA's prohibition against recoupment adjustments continuing for discharges in subsequent years.  TMA § 7(b)(2).

22.     The Secretary applied the first ATRA-related cut in the FFY 2014 IPPS rule.  At that time, the Secretary projected that it could recoup the $11 billion by applying four consecutive rate cuts of 0.8 percent each year between FFYs 2014 and 2017, for a cumulative reduction of 3.2 percent by FFY 2017.  *See* 78 Fed. Reg. 50496, 50515 (Aug. 19, 2013).  Based on that initial projection, CMS adopted a 0.8 percent rate cut to the standardized amount in FFY 2014, and again in FFYs 2015 and 2016.  *Id.*; 79 Fed. Reg. 49853, 49873 (Aug. 22, 2014); 80 Fed. Reg. 49325, 49345 (Aug. 17, 2015).

23.     The Secretary indicated that the ATRA cuts were not to be a permanent reduction to inpatient payments, and that any negative adjustment would "eventually be offset by an equivalent positive adjustment once the full $11 billion recoupment requirement has been realized."  78 Fed. Reg. at 50515.  At no point during these three rulemakings did the Secretary propose a specific adjustment for FFY 2017 because "estimates of any future adjustments are

subject to slight variations in total savings." 78 Fed. Reg. at 50515. However, the Secretary did reiterate his plan to implement an adjustment of "approximately" negative 0.8 percent in FFY 2017 for a total adjustment of negative 3.2 percent (accounting for adjustments in FFY 2014 through 2017). *See* 80 Fed. Reg. at 49345.

24.     The Secretary also repeatedly reaffirmed that "the adjustment required under section 631 of ATRA is a one-time recoupment of a prior overpayment, not a permanent reduction to payment rates. Therefore, any adjustment made to reduce rates in one year would eventually be offset by a positive adjustment, once the necessary amount of overpayment is recovered." *See*, *e.g.*, 79 Fed. Reg. at 49873, 78 Fed. Reg. at 50515, and 80 Fed. Reg. at 49345. This is consistent with the clear requirement under TMA section 7(b)(2) that any adjustment under section 7(b)(1)(B), including ATRA recoupment adjustments, "shall not be included in the determination of standardized amounts for discharges occurring in a subsequent year."

### 4.     *MACRA and Additional Recoupment In FFY 2017*

25.     In section 414 of the Medicare Access and CHIP Reauthorization Act of 2015 ("MACRA"), passed April 16, 2015, Congress instructed CMS *delay* (though not eliminate) the upward adjustment in FFY 2018, which Congress acknowledged the Secretary "estimated to be an increase of 3.2 percent," thus implying that Congress understood the negative adjustment through FFY 2017 to approximate 3.2 percent. Pub. L. No. 114-10, § 414, 129 Stat. 87, 162-63 (2015). Instead, MACRA instructed CMS to make six consecutive upward adjustments of 0.5 percent each year between FFYs 2018 and 2023, for a cumulative upward adjustment of 3.0 percent, rather than 3.2 percent, leaving the Secretary to implement any final restorative adjustment to fully offset the remaining ATRA adjustments in FFY 2024. *See* TMA

§ 7(b)(1)(B), as amended.   The Congressional Budget Office ("CBO") estimated that the reduction from 3.2 to 3.0 percent "would reduce direct spending by $15.1 billion over the 2018-2025 period."   *See* CBO Cost Estimate and Supplemental Analyses for H.R. 2, the Medicare Access and CHIP Reauthorization Act of 2015, dated March 25, 2015 at 7; *see also id.* at 12.

26.     However, in a substantial departure from its previous estimates, the Secretary finalized a significantly higher negative adjustment to the standardized rate for FFY 2017: 1.5 percent instead of the 0.8 percent as originally planned "due to lower than previously estimated inpatient spending."   81 Fed. Reg. 56762, 56783 (Aug. 22, 2016).   When coupled with the ATRA reductions from 2014 to 2016, this resulted in a cumulative reduction of 3.9 percent—0.7 percent higher than the 3.2 percent initially projected and 0.9 percent higher than the 3.0 percent cumulative positive adjustment mandated by MACRA.   Such a large change is not the "slight" variation that the Secretary contemplated at 78 Fed. Reg. at 50515.

27.     During the rulemaking process, commenters objected to this significant increase in the negative adjustment, and stated that MACRA ratified a negative 0.8 (not 1.5) percent reduction in FFY 2017 by expressly referencing the 3.2 percent adjustment in the statute.   The Secretary disagreed, and argued that MACRA rendered the ATRA adjustments in excess of 3.0 percent permanent because the MACRA adjustments only totaled 3.0 percent—less than the expected 3.2 percent adjustment or the final 3.9 percent adjustment for FFY 2017.   *See* 81 Fed. Reg. at 56783-84 ("[E]ven if we did not adopt an adjustment of -0.8 percent for FY 2017, the cumulative effect of our ATRA adjustment would be -3.2 percent, leaving a -0.2 percent gap between our ATRA adjustments and the MACRA adjustments.   It is not clear to us that the MACRA provision was intended to augment or limit CMS' separate obligation, pursuant to the

ATRA, to fully offset the $11 billion by FY 2017 under section 7(b)(1)(A)(ii) of the TMA, when that language was not changed by the MACRA and, as noted, the MACRA would not fully restore even an estimated -3.2 percent adjustment."). The Secretary stated that he would "address the [MACRA] adjustments for FY 2018 and later in future rulemakings." *Id.* at 56784.

### 5. *21st Century Cures and Failures in the FFY 2018 and FFY 2019 Rulemakings*

28. On December 13, 2016, Congress passed the 21st Century Cures Act, which replaced the 0.5 percent increase scheduled for 2018 (as implemented by MACRA) with a 0.4588 percent increase. Pub. L. No. 114-225, § 15005, 130 Stat. 1033, 1320 (2016). The remaining adjustments for years 2019 through 2023 were left at 0.5 percent. The CBO estimated that this would result in a negative $760 million in direct Medicare spending from 2017 through 2026. *See* CBO Direct Spending and Revenue Effects for H.R. 34, dated November 28, 2016.

29. In the 21st Century Cures Act, Congress *did not* amend the language in section 7(b)(1)(B)(iii) estimating the ATRA adjustments at issue to be 3.2 percent. Congress therefore also *did not* delay restoration of the additional 0.7 percent ATRA recoupment adjustment applied in FFY 2017 by amending this 3.2 percent language. Instead, Congress delayed restoration of a *mere* 0.0412 percent, but left intact the requirement that the "adjustment made under [section 7(B)(1)(B)] for discharges occurring in a year . . . not be included in the determination of standardized amounts for discharges occurring in a subsequent year."

30. Accordingly, in the FFY 2018 IPPS final rule, CMS increased the standardized amount by only 0.4588 percent. 82 Fed. Reg. 37991, 38009 (Aug. 14, 2017). The agency further proposed to make positive adjustments of 0.5 percent for FFYs 2019 through 2023. *Id.*

31.     Commenters to the rulemaking noted that, if the Secretary were to adopt only a positive 0.4588 percent adjustment for FFY 2018, but continue the addition 0.7 percent ATRA reduction, hospitals would be left with a larger permanent cut that contemplated by Congress in MACRA.  *See* 82 Fed. Reg. at 38009.  Commenters also asserted that the Secretary's proposal to apply just a 0.4588 positive adjustment misinterpreted the relevant statutory authority and thus urged the Secretary to restore the additional, positive 0.7 adjustment in FFY 2018.  *Id.*  This positive 0.7 percent adjustment is the difference between the *actual* ATRA adjustment of 3.9 percent and the initial CMS estimate of 3.2 percent.  Commenters also requested that the Secretary use his "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) to increase the FFY 2018 adjustment by 0.7 percent.  *Id.*

32.     Notwithstanding these comments, CMS failed to restore the 0.7 percent additional ATRA reduction of IPPS payments imposed in FFY 2017, in violation of section 7(b)(2) of the TMA.  *Id.*  According to the Secretary, "the directive regarding the applicable adjustment for FY 2018 is clear" that it was required to finalize only a positive 0.4588 percent adjustment for FFY 2018, essentially continuing the negative 0.7 percent ATRA reduction permanently.  *Id.*

33.     In the FFY 2019 IPPS Final Rule, CMS increased the standardized amount by only 0.5 percent.  83 Fed. Reg. 41144, 41157 (Aug. 17, 2018).  Commenters to the rulemaking again argued that CMS should increase the IPPS rate by an additional 0.7 percent because at the time MACRA was enacted, Congress was not aware that CMS would reduce rates by an additional 0.7 percent in FFY 2017.  *Id.*  Some commenters suggested that even if the agency determined that MACRA does not require a 0.7 percent adjustment, it should nonetheless exercise its statutory authority to implement a 0.7 percent adjustment to restore the standardized

amount to the baseline.  These arguments notwithstanding, the agency again refused to make an additional 0.7 percent adjustment.

34.     In both FFYs 2018 and 2019, the Secretary has ignored the clear prohibition against continuing adjustments in subsequent years under TMA section 7(b)(2).  The Secretary erroneously stated that he was bound to this outcome without addressing commenters' request that he utilize his "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I).

### C.     THE MEDICARE APPEALS PROCESS

35.     Section 1878(a) of the Social Security Act entitles a provider of services under the Medicare program to a hearing before the Provider Reimbursement Review Board ("PRRB") if three prerequisites are met: (i) the provider is dissatisfied with a final determination of the Secretary as to the amount of the payment under the Medicare Act; (ii) the provider files a request for hearing within 180 days of the final determination; and (iii) the amount in controversy is at least $10,000 for an individual appeal or $50,000 for a group appeal.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.  If an appeal satisfies these requirements, the PRRB has jurisdiction to hear the appeal.  *Id.*

36.     Although Congress has limited the scope of judicial review of "determinations and adjustments" under section 7(b)(5) of the TMA ("There shall be no administrative or judicial review under section 1878 of the Social Security Act . . . or otherwise of any determination or adjustments made under this subsection"), Plaintiffs here do <u>not</u> challenge a "determination or adjustment" made under section 7.  Rather, Plaintiffs challenge the Secretary's *ultra vires* failure to reverse a 0.7 percent <u>reduction</u>, which was required by Congress.  The Plaintiffs also

challenge the Secretary's arbitrary and capricious failure to address comments urging him to use his exceptions and adjustments authority to offset the 0.7 percent reduction.

37.     When the PRRB has jurisdiction to hear an appeal, but the appeal involves a statute, regulation, or policy that the PRRB is without authority to overturn, the PRRB may, through its own motion or upon request of the provider, grant expedited judicial review ("EJR") of the appeal.  42 U.S.C. § 1395oo(f)(1).  If EJR is granted, the provider can seek judicial review in federal court without first having a hearing before the PRRB.  *Id.*  The provider must file its complaint no later than 60 days after receiving notice of the PRRB's decision to grant EJR.  *Id.*

38.     The Medicare statute allows providers to bring a civil action pursuant to the Administrative Procedure Act ("APA") through EJR.  *See* 42 U.S.C. § 1395oo(f)(l).

39.     The APA provides that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]"  5 U.S.C. § 706(2).

## V.     ERRORS IN THE SECRETARY'S RULEMAKING

40.     The Secretary's actions are 1) in excess of statutory authority, 2) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 3) without observance of procedure as required by law, and 4) otherwise defective both procedurally and substantively.

A.     **The Secretary's Failure to Restore the 0.7 Percent ATRA Reduction Is Contrary to the Plain Meaning of TMA**

41.     TMA explicitly requires that adjustments in one year may not apply in subsequent years.  Although Congress made numerous revisions to section 7(b) of TMA, as discussed above, Congress never changed the requirement that each "adjustment made under [section 7(b)(1)(B)] for discharges occurring in a year . . . not be included in the determination of standardized amounts for discharges occurring in a subsequent year."  *See* TMA § 7(b)(2).  Congress has therefore consistently barred continued recoupment adjustments.

42.     The ATRA adjustments were recoupment adjustments authorized under section 7(b)(1)(B), *including* the additional negative 0.7 percent adjustment applied in FFY 2017.  Each ATRA recoupment adjustment must be reversed under section 7(b)(2) unless Congress explicitly authorizes CMS to continue such recoupment adjustment.

43.     Congress did not intend to create an on-going negative adjustment to IPPS payments, and in MACRA and the 21st Century Cures Act, retained the language referencing the 3.2 percent estimate of ATRA adjustments to be reversed.  Although Congress authorized the Secretary to continue *portions* of the ATRA recoupment adjustments into FFY 2023, MACRA § 414, it was silent as to the disposition of the additional, negative 0.7 percent recoupment adjustment applied in FFY 2017, and thus never authorized CMS to continue this additional negative recoupment adjustment of 0.7 percent.  This is particularly true, given Congress's passage of the 21st Century Cures Act, which could have authorized CMS's 0.7 percent adjustment (then published in final rulemaking), but did not; instead, it merely delayed 0.0412 of the original 3.2 percent recoupment.  In absence of express authorization, the negative 0.7 percent recoupment must be reversed under section 7(b)(2).

44.     The Secretary is aware of section 7(b)(2)'s requirement, and has even noted multiple times that "the adjustment required under section 631 of the ATRA is a one-time recoupment of a prior overpayment, not a reduction to payment rates.  Therefore, . . . any adjustment made to reduce payment rates in one year would eventually be offset by a positive adjustment, once the necessary amount of overpayment is recovered."  80 Fed. Reg. at 49345, 79 Fed. Reg. at 49873, 78 Fed. Reg. at 50515.

45.     However, TMA section 7(b)(2) makes unlawful the Secretary's decision to only adjust the standardized amount by 0.5 percent in FFY 2019, and its plan to increase the adjustment to the standardized amount by just 0.5 percent in FFYs 2020 through 2023 makes this reduction permanent.  The Secretary has no discretion under 7(b)(2) to act otherwise.

46.     This permanent negative reduction is therefore contrary to the plain language of TMA section 7(b)(2) and the Secretary is obligated to fully restore the ATRA adjustment by 1) restoring the residual ATRA adjustment of 0.7 percent in FFY 2019, 2) applying positive adjustments for FFY 2019 through 2023 as specified in MACRA section 414, *as amended by* 21st Century Cures section 15005, and, 3) in FFY 2024, make a final positive adjustment of 0.24 percent to complete the required restoration of the ATRA adjustments.

47.     To the extent the Secretary suggests that MACRA § 414, *as amended by* 21st Century Cures § 15005,  rescinded the TMA's command to restore the 0.7 percent payment cut, he is wrong.  The House of Representative originally contemplated reducing the 0.5 percent MACRA increase with a lower increase in the Helping Hospitals Improve Patient Care Act of 2016.  *See* H.R. 5273, 114th Cong. (2016), § 105 (introduced on May 18, 2016 and proposing to amend the TMA by reducing the 0.5 percent to 0.4599 percent).  The House Ways and Means

Committee report on the proposed legislation changed the reduction to 0.459 and stated that "[u]nder current law, hospitals are receiving a 0.8 percent reduction in payments, as mandated by [ATRA]." *See* H. Comm. on Ways and Means, Helping Hospitals Improve Patient Care Act of 2016, H.R. Rep. 114-604, at 12 (2016); *see also id.* at 5 (slightly revising proposed language).

48.     Although the Helping Hospitals Improve Patient Care Act of 2016 was never passed, the draft language contained in the Committee's report was used nearly verbatim in 21st Century Cures, save for the slight reduction moving from 0.459 to 0.4588.  Thus, at the time the relevant language was drafted (the same language that was eventually incorporated into 21st Century Cures), CMS had not finalized a policy to reduce FFY 2017 payments by 1.5 percent instead of 0.8 percent.  Therefore, that language cannot be construed as authorizing the additional 0.7 percent payment cut.

49.     Furthermore, the CBO scoring of 21st Century Cures indicates that the legislation was not meant to adopt the 0.7 percent reduction.  The CBO scored a reduction in direct Medicare spending of just $760 **million** over a 10-year period.  It stands to reason that this reduction is solely related to the reduction of the 0.5 percent increase to 0.4588 percent (*i.e.*, a change of 0.0412.  Had Congress intended to apply (and had CBO scored) a larger reduction of 0.7412 percent (0.0412 + 0.7), the change in direct spending would be much more significant.  By point of contrast, the CBO scored the MACRA change of just 0.2 percent (from 3.2 to 3.0) at $15.1 **billion** over 8 years.

**B.     The Secretary's Failure to Exercise or Even Recognized His Discretion Under 42 U.S.C. § 1395ww(d)(5)(I) Is Arbitrary and Capricious**

50.     Even if the Secretary were not *mandated* to restore the 0.7 percent payment cut, at a minimum, he has the discretion to do so under his power to implement "exceptions and

35

adjustments to such payment amounts . . . as the Secretary deems appropriate." 42 U.S.C. § 1395ww(d)(5)(I). The Secretary has committed reversible error, therefore, in suggesting in the FFY 2018 IPPS Final Rule that he did not have the authority to make this curative adjustment. 82 Fed. Reg. at 38009. While commenters raised the issue again in the FFY 2019 IPPS Final Rule, the Secretary did not even comment on his discretionary authority in the rulemaking. 83 Fed. Reg. at 41157.

51.     In addition, the APA requires the Secretary to sufficiently and rationally explain his reasoning for his actions, findings or conclusions; to do otherwise is prohibitively arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). The Secretary is also barred under the APA from implementing the Medicare statute through actions, findings, or conclusions without observance of required procedure. 5 U.S.C. §706(2)(D). For example, the Secretary is required to provide notice of proposed rulemaking, afford interested parties an opportunity to comment, and consider the relevant matters presented. *See* 5 U.S.C. § 533. The Medicare statute itself also prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing payment for services unless promulgated via regulation. 42 U.S.C. § 1395hh(a).

52.     As highlighted above, numerous commenters during the FFY 2018 rulemaking requested that the Secretary exercise his "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) to apply a positive adjustment of 0.7 percent in FFY 2018, in addition to the 0.4588 percent adjustment required under 21st Century Cures. *See* 82 Fed. Reg. at 38009. Since the final rulemaking did not engage with the commenters' requests, at a minimum, the Secretary failed to provide a rational or sufficient explanation for his refusal to exercise his discretion rendering that refusal since the only purpose of the ATRA reductions was to recoup $11 billion,

and because that purpose was fulfilled in 2017, it was an abuse of discretion for the Secretary not

to reverse these reductions once the entire rational for their existence had been removed.

## VI.    PROCEDURAL HISTORY

53.    Pursuant to the procedures set forth at 42 U.S.C. § 1395oo, the Plaintiffs have

challenged and are dissatisfied with the Secretary's failure to make a positive 0.7 percent

adjustment to the FFY 2019 inpatient rates.  The Plaintiffs filed appeals with the PRRB.  The

Plaintiffs' appeals satisfied all jurisdictional requirements for an appeal set forth at 42 U.S.C.

§ 1395oo(a)-(b).

54.    The PRRB determined that it had jurisdiction to hear the Plaintiffs' appeals (save

Saint Michael's Medical Center as discussed below), but lacked authority to decide the legal

questions at issue in this case.  The PRRB granted EJR for the following of Plaintiffs' appeals, as

demonstrated in Exhibit 1:

   (a) Cottage Health FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Group, PRRB
       Case No. 19-0963GC;

   (b) Mount Sinai Health System FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP,
       PRRB Case No. 19-0964GC;

   (c) Franciscan Missionaries FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Grp.,
       PRRB Case No. 19-0965GC;

   (d) Health Quest FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Group, PRRB
       Case No. 19-0966GC;

   (e) ProMedica Health FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Group,
       PRRB Case No. 19-0980GC;

   (f) Lafayette General Health FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP
       Grp., PRRB Case No. 19-0981GC;

   (g) UHHS FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Group, PRRB Case
       No. 19-0985GC;

     (h)  Prime Healthcare FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Group, PRRB Case No. 19-1013GC;

     (i)  Loma Linda University FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Group, PRRB Case No. 19-1014GC;

     (j)  Sisters of Charity Health FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Grp., PRRB Case No. 19-1040GC;

     (k)  HRS FFY 2019 ATRA IPPS 0.7% Rate Reduction Group, PRRB Case No. 19-1101G;

     (l)  Alecto Healthcare FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP Group, PRRB Case No. 19-1114GC;

     (m)  Cleveland Clinic Foundation FFY 2019 ATRA IPPS 0.7% Rate Reduction CIRP, PRRB Case No. 19-1134GC; and

     (n)  HRS FFY 2019 ATRA IPPS 0.7% Rate Reduction 2 Group, PRRB Case No. 19-1574G.

55.     The PRRB rejected jurisdiction for the HRS FFY 2019 ATRA IPPS 0.7% Rate Reduction 2 Group, PRRB Case No. 19-1574G.  The Providers in this group included Springhill Medical Center (Medicare Provider No. 01-0144) and Pacifica Hospital of the Valley (Medicare Provider No. 05-0378).  This group appeal was filed on April 1, 2019, which was within 180 days of the notice of correction for the FFY 2019 IPPS Final rule.  83 Fed. Reg. 41144 (Aug. 17, 2018).  The PRRB determined that the corrected rule did not make a substantive change to the reimbursement rates, policies or payment methodologies that the providers challenged in their appeal.  The PRRB therefore denied EJR for this group appeal.

56.     The Plaintiffs now file this civil action within 60 days of the PRRB's EJR decisions, and claim that the Secretary's FY 2019 rulemaking, which failed to reverse 0.7 percent of the ATRA reductions, is unlawful for at least the substantive and procedural reasons set forth below.

**COUNT I**
**Violation of the Administrative Procedure Act, Medicare Statute, and Other Statutes:**
**The Secretary's Failure to Restore the ATRA Reduction Is Contrary to Law**

57.     The allegations set forth in paragraphs 1 through 61 are incorporated by reference as if fully set forth herein.

58.     Under the APA, the Secretary may not act in a way that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), or that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(C).

59.     The multi-year and possibly permanent 0.7 percent ATRA reduction in inpatient hospital payment rates is unlawful and should be set aside.  Section 7(b)(2) of the TMA, as amended, requires that any adjustment under section 7(b)(1)(B)—including the ATRA recoupment adjustments—"shall not be included in the determination of standardized amounts for discharges occurring in a subsequent year."  The Secretary has no authority to continue recoupment adjustments into subsequent years except as specifically direct by Congress in the TMA.

60.     Further, Congress only authorized the Secretary to continue an ATRA recoupment adjustment of approximately 3.2 percent in section 7(b)(1)(B)(iii).  Despite amending the TMA in 2016 (after CMS had finalized the additional negative 0.7 percent ATRA adjustment), Congress did not amend the TMA to replace the reference to a 3.2 percent adjustment with a reference to a 3.9 percent adjustment or to otherwise authorize the Secretary to continue the additional 0.7 percent recoupment adjustment.  Absent such statutory authorization for continuing the 0.7 percent payment reduction, the Secretary's action is unlawful.

61.     In sum, the Secretary's failure to restore the 0.7 percent ATRA reduction in FFY

2019 is inconsistent with the TMA, as amended, and thus "not in accordance with law."

**COUNT II**
**Violation of the Administrative Procedure Act, Medicare Statute, and Other Statutes:**
**The Secretary's Refusal to Exercise Discretion Under 42 U.S.C. § 1395ww(d)(5)(I)**
**is Arbitrary and Capricious, Contrary to Law and an Abuse of Discretion**

62.     The allegations set forth in paragraphs 1 through 61 are incorporated by reference

as if fully set forth herein.

63.     Conduct by an agency is considered arbitrary and capricious when it is not

explained, or when it is not rationally explained.  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43

(*quoting Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

64.     The Secretary's suggestion in the FFY 2019 IPPS Final Rule that he did not have

the authority to restore the 0.7 percent payment cut is contrary to law because 42 U.S.C.

§ 1395ww(d)95)(I) gives him the discretion to implement "exceptions and adjustments to such

payment amounts . . . as the Secretary deems appropriate."

65.     At a minimum, the Secretary's failure to adequately explain the rationale or fully

address his decision for not applying his "exceptions and adjustments" discretion under 42

U.S.C. §1395ww(d)(5)(I) is thus arbitrary and capricious and violates the APA.

66.     In addition, the Secretary's refusal to exercise his discretion under 42 U.S.C.

§ 1395ww(d)(5)(I) is an abuse of discretion since the sole purpose of the cuts at issue were to

recoup the $11 billion contemplated by ATRA and that purpose was accomplished by FFY 2017.

Therefore, there was no rational basis or justification for the Secretary to leave a portion of those

reductions in place when the Secretary certainly had at least the discretion (if not the mandate) to restore them.

**COUNT III**
**Violation of the Administrative Procedure Act, Medicare Statute, and Other Statutes:**
**The Secretary's Refusal to Exercise Discretion Under 42 U.S.C. § 1395ww(d)(5)(I)**
**is Arbitrary and Capricious Because the Secretary Failed**
**to Observe the Procedure Required by Law**

67.     The allegations set forth in paragraphs 1 through 61 are incorporated by reference as if fully set forth herein.

68.     The APA proscribes agency action that is "without observance of procedure required by law."  5 U.S.C. § 706(2)(D); *see also* § 706(2)(A).  The APA's procedural requirements include that the Secretary (a) provide a notice of proposed rulemaking, (b) afford interested parties the opportunity to provide comments, and (c) consider those comments before finalizing the rule.  5 U.S.C. § 553(b)-(c).

69.     The Social Security Act, 42 U.S.C. § 1395hh(a), also requires the Secretary to utilize public notice-and-comment rulemaking procedures when establishing substantive changes in payment for services covered under the Medicare statute.

70.     The Medicare statute provides that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing . . . the payment for services . . . shall take effect unless it is promulgated by the Secretary by regulation."  42 U.S.C. § 1395hh(a)(2).

71.     The Secretary wholly failed in the FFY 2019 IPPS Final Rule to address commenters' questions and requests regarding the exercise of his "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I), and it is thus not clear that the Secretary

considered the commenters' relevant questions and requests concerning FFY 2019 reductions to the IPPS base payment rate.

## COUNT IV
### Mandamus (28 U.S.C. § 1361)

72.     The allegations set forth in paragraphs 1 through 61 are incorporated by reference as if fully set forth herein.

73.     The Secretary has the non-discretionary duty to reimburse Plaintiffs fully at the amounts to which they are entitled under the law.  The Secretary's failure to restore the additional 0.7 percent ATRA reduction violates the APA and the TMA.  Under the Court's authority pursuant to 28 U.S.C. § 1361, the Plaintiffs are entitled to issuance of a writ of mandamus, directing the Secretary to reverse the unlawful 0.7 percent payment reduction and apply a positive adjustment of 0.7 percent for FFY 2019.

## COUNT V
### Violation of the Administrative Procedure Act, Medicare Statute:
### The Secretary's Dismissal of the HRS FFY 2019 ATRA IPPS 0.7% Rate Reduction
### 2 Group Is In Excess of Statutory Authority

74.     The allegations set forth in paragraphs 1 through 61 are incorporated by reference as if fully set forth herein.

75.     Review of final PRRB decisions is conducted under the applicable provisions of the APA.  42 U.S.C. § 1395oo(f)(1).

76.     Under the APA, 5 U.S.C. § 706(2)(A) & (C), this Court is required to hold unlawful and set aside final agency action that is "arbitrary, capricious [or] an abuse of discretion," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

77.     The PRRB's decision to dismiss the HRS FFY 2019 ATRA IPPS 0.7% Rate Reduction 2 Group was arbitrary and capricious.   The relationship between the notice of correction for the FFY 2019 IPPS Final Rule from which the hospitals filed their appeal and the underlying FFY 2019 IPPS Final Rule was sufficient to for the PRRB to find that it had jurisdiction over the group appeal.

## VII.   RELIEF REQUESTED

The Plaintiffs request an Order:

(a) Reversing the PRRB's dismissal of the HRS FFY 2019 ATRA IPPS 0.7% Rate Reduction 2 group;

(b) Declaring that the Secretary's failure to restore the 0.7 percent ATRA reduction in the FFY 2019 IPPS Final Rule (or otherwise) is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

(c) Directing the Secretary to apply an additional positive adjustment of 0.7 percent for FFY 2019, and make the payments due to the Plaintiffs with interest determined in accordance with 42 U.S.C. § 1395oo(f)(2);

(d) Requiring the Secretary to pay legal fees and cost of suit incurred by the Plaintiffs; and

(e) Providing such other relief as the Court may consider appropriate.

Respectfully submitted,


/s/ Daniel J. Hettich
Daniel J. Hettich
  D.C. Bar No. 975262
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006
(202) 737-0500 (phone)
202.626.3737 (fax)
DHettich@kslaw.com

*Attorney for Plaintiffs*


Date:  December 23, 2019